# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FREDERICK BANKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 07-309 (EGS) |
| | ) | |
| HARLEY LAPPIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT; OR FOR A MORE DEFINITE STATEMENT

Pursuant to Fed. R. Civ. P. 11(a); 12(b)(1),(2),(3),(4) and (6), Defendants[1] hereby move to

dismiss this action.  In the alternative, the Court is asked to enter summary judgment in favor of

the moving Defendants, pursuant to Fed. R. Civ. P. 56, because there is no genuine issue as to

any material fact and the Defendants are entitled to judgment as a matter of law.[2]  Pursuant to

---

[1]  As identified in the Complaint, the Defendants are: the Federal Bureau of Prisons, Attorney General Alberto Gonzales, the President and Vice President of the United States, the Senate, the House of Representatives, Senator Charles Schumer, Henry Paulson, Treasurer of the United States, the Library of Congress, the United States Passport Office, the Transportation Security Agency, Harley Lappin, Director of the Federal Bureau Prisons; Patricia Stansbury, John Miosi, Daniel Greene, Walter Harris, Michael Allen, and Robert Dodson.

[2]  Plaintiff should take notice that any factual assertions contained in the documents in support of this motion may be accepted by the Court as true unless the plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in the documents.  See Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992), Local Rule 7(h); 56.1 and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to

Fed. R. Civ. P. 12(e), defendant Department of Justice respectfully requests this Court to require

a more definite statement if Plaintiff's claim is not dismissed.  The Court is respectfully referred

to the accompanying memorandum and to the statement of material facts accompanying this

motion.

Respectfully submitted,

_____

JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____

RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____

KAREN L. MELNIK, D.C. Bar #436452
Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20530
Telephone: (202) 307-0338

---

be supplemented or opposed by depositions, answers to interrogatories, or further
affidavits.  When a motion for summary judgment is made and supported as
provided in this rule, an adverse party may not rest upon the mere allegations or
denials of the adverse party's pleading, but the adverse party's response, by
affidavits or as otherwise provided in this rule, must set forth specific facts
showing that there is a genuine issue for trial.  If the adverse party does not so
respond, summary judgment, if appropriate, shall be entered against the adverse
party.

Fed. R. Civ. P. 56(e).

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| FREDERICK BANKS, et al. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 07-309 (EGS) |
| | ) | |
| HARLEY LAPPIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT,**
**OR FOR A MORE DEFINITE STATEMENT**

        This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the

Privacy Act of 1974, 5 U.S.C. § 552(a), and pertains to Plaintiff's alleged FOIA/Privacy Act

requests to the Defendants.  Plaintiff also makes Bivens-type[3] constitutional claims and False

Claims Act ("FCA") claims and seeks, *inter alia*, money damages.  Plaintiff, Frederick Banks, is

a federal inmate confined at the Federal Correctional Institution in Yazoo City, Mississippi.

Vampire Nation[4] is not described in Plaintiff's Complaint.

        Plaintiff's claims against the Office of the President, the Vice President, the House of

Representatives, the Senate, and Senator Schumer, should be dismissed because this Court lacks

---

[3]     Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[4] Vampire Nation is also listed as a Plaintiff in this case.  However, any claims made on behalf of
Vampire Nation should be dismissed because no one representing Vampire Nation signed the
complaint, as required by Fed. R. Civ. P. 11(a).  Moreover, there is no evidence in the complaint
or otherwise to indicate that Vampire Nation has standing to bring any of the claims set forth in
the complaint.

subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  The Court lacks subject matter

jurisdiction over these Defendants because none qualify as an "agency" under FOIA.  Further,

Plaintiff's FOIA claims against the Transportation Security Administration ("TSA"), the Library

of Congress ("LOC"), the Department of the Treasury ("Treasury"), the Department of State

("State"), the Bureau of Prisons ("BOP"), and the Department of Justice ("DOJ") should be

dismissed because Plaintiff has not submitted a FOIA request as described in his Complaint to

these Defendants.  Thus, he has failed to exhaust his available administrative remedies.  The

FOIA claims against the DOJ should be dismissed because of the inadequacy of Plaintiff's

pleading or, in the alternative, should be clarified so that the DOJ can determine where to search

for the documents sought by Plaintiff's FOIA request.

In the alternative, all Defendants are entitled to summary judgment on the FOIA claims.

No issue of material fact exists as to whether the Defendants received FOIA requests or are

agencies subject to FOIA.  Thus, the Defendants deserve judgment as a matter of law.  To the

extent that Plaintiff alleges Bivens claims against the BOP, these claims should be dismissed for

lack of personal and subject matter jurisdiction, and for improper venue.

## FACTUAL BACKGROUND

The relevant facts are contained in the attached Statement of Material Facts Not in

Genuine Dispute.

**ARGUMENT**

**I.     Legal Standards**

    **A.**    <u>Requests For Dismissal</u>

    Defendants move for dismissal of Plaintiff's Complaint under Rule 12(b)(1), lack of

subject matter jurisdiction, 12(b)(2), lack of personal jurisdiction, 12(b)(3), improper venue,

12(b)(4), insufficiency of process, and 12(b)(6), failure to state a claim.

    The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of a

complaint.  <u>Atchinson v. District of Columbia</u>, 73 F. 3d 418, 421 (D.C. Cir. 1996).  A complaint

may be dismissed for failure to state a claim upon which relief may be granted, if the facts pled

and reasonable inferences therefrom are legally insufficient to support the relief requested.

<u>Appleton v. United States</u>, 69 F. Supp. 2d. 83, 86 (D.D.C. 1999); <u>Sparrow v. United Air Lines,

Inc.</u>, 216 F.3d 1111, 1117 (D.C. Cir. 2000).  A court should dismiss a complaint for failure to

state a claim when the complaint fails "to raise a right to relief above the speculative level."  <u>E.g.</u>,

<u>Bell Atlantic v. Twonbly</u>, 1275 S.Ct. 1955, 1956 (2007).  The court need not, however, accept as

true the plaintiff's legal conclusions.  <u>See</u> <u>Taylor v. FDIC</u>, 132 F.3d 753, 762 (D.C. Cir. 1997).

From the facts alleged in the complaint in this case, Plaintiff can prove no set of facts that would

entitle him to relief.

    **B.**    <u>Evidentiary Standard For Summary Judgment</u>

    Where no genuine dispute exists as to any material fact, summary judgment is required.

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).  A genuine issue of material fact is one

that would change the outcome of the litigation.  <u>Id.</u> at 247.  "The burden on the moving party

may be discharged by 'showing'—that is, pointing out to the [Court]—that there is an absence of

evidence to support the non-moving party's case." Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987). Once the moving party has met its burden, the non-movant—here Plaintiff—may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment, Plaintiff must present some objective evidence that would enable the Court to find he is entitled to relief.

In Celotex Corp. v. Catrett, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986); see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor). In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

     C.    FOIA Summary Judgment Standards

In a FOIA/PA action, summary judgment is appropriate when, as here, the pleadings, together with the declarations, demonstrate that "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Washington Post Co. v. U.S. Dept. of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989).

An agency satisfies the summary judgment requirements in a FOIA or Privacy Act case by showing that each document was produced, not withheld, is unidentifiable, or is exempt from

4

disclosure.  <u>Weisberg v. U.S. Dept. of Justice</u>, 627 F.2d 365, 368 (D.C. Cir. 1980).  To meet its

burden, the defendant may rely on affidavits or declarations and other evidence by the agency

which show that the documents are exempt from disclosure.[5]  Summary judgment may be

awarded to an agency in a FOIA or Privacy Act case solely on the basis of agency affidavits or

declarations if the "affidavits are 'relatively detailed, non-conclusory, and not impugned' by

evidence . . . of bad faith on the part of the agency."  <u>Public Citizen, Inc. v. Dept. of State</u>, 100 F.

Supp. 2d 10, 16 (D.D.C. 2000) (<u>quoting</u> <u>McGhee</u> v. <u>Central Intelligence Agency</u>, 697 F.2d 1095,

1102 (D.C. Cir. 1983)).  Once the Court determines that the declarations are sufficient, it need

not inquire further.  <u>Students Against Genocide v. Department of State</u>, 257 F.3d 828, 833 (D.C.

Cir. 2001).

## II.    Plaintiff's FOIA Claims

<u>        A.    FOIA's Jurisdictional Requirement</u>

        Subject matter jurisdiction over FOIA claims requires that a request was directed at an

"agency."  The jurisdictional grant of FOIA states that "the district court . . . has jurisdiction to

enjoin the agency from withholding agency records and to order the production of any agency

records improperly withheld . . ." 5 U.S.C. § 552(a)(4)(B).  The Supreme Court held that federal

jurisdiction of FOIA claims is thus based "upon a showing that an agency has (1) 'improperly';

(2) 'withheld'; (3) 'agency records.'"  <u>Kissinger v. Reporters Comm. For Freedom of the Press</u>,

445 U.S. 136, 150 (1980).  Therefore, if a FOIA request is not directed at an agency as defined by

FOIA, the jurisdictional conditions are not satisfied.  <u>See</u> <u>Voinche v. Executive Office of the</u>

---

[5]    For purposes of summary judgment, an agency's decision to withhold information from a
FOIA requester is subject to <u>de</u> <u>novo</u> review by the courts.  <u>Hayden</u> v. <u>National Security Agency</u>
<u>Cent. Sec. Serv.</u>, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), <u>cert</u>. <u>denied</u>, 446 U.S. 937 (1980).

*President*, 2007 U.S. Dist. LEXIS 42268 at *4 (D.D.C. June 12, 2007) (Leon, J.) (finding that the court lacked subject matter jurisdiction because the Executive Office of the President is not a "discrete agency subject to either FOIA or the Privacy Act").

> **B.**    This Court Lacks Jurisdiction Over The FOIA Claims Against The President And The Vice President Because Neither Are FOIA "Agencies"

Plaintiff's claims against the Executive Office of the President and Vice President must be dismissed for lack of subject matter jurisdiction. The FOIA subjects the Executive Office of the President to FOIA requests. See 5 U.S.C. § 552(f)(1). However, it is well established that the President and his staff, along with the Vice President, are not included under the Act. See Nat'l Sec. Archive v. Archivist of the United States, 909 F.2d 541, 545 (D.C. Cir. 1990) (stating that the Office of the President is not an "agency" for FOIA purposes) (citing Kissinger, 445 U.S. at 156); see also Schwarz v. Dep't of the Treasury, 131 F. Supp. 2d 142, 147 (D.D.C. 2000). In Kissinger, the Supreme Court concluded that "the 'Executive Office' does not include the Office of the President." Id. at 156. Further, "The President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President are not included within the term 'agency' under the FOIA." Id. (citations omitted). It follows that the Vice President is also not subject to FOIA requests. See Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group, 219 F. Supp. 2d 20, 55 (D.D.C. 2002) (concluding Vice President not subject to FOIA). Because the President and Vice President are not considered FOIA "agencies," this Court does not have jurisdiction over these claims.

Plaintiff alleges FOIA violations by the Executive Office of the President and the Office of the Vice President, see Compl. at ¶¶ 6-7. He claims that these requests were made in letters to

the President and Vice President.  Id. at ¶ 2.  While an entity under the umbrella of the Executive

Office of the President could be subject to FOIA, the President and Vice President certainly are

not.  Therefore, even if Plaintiff's letters could be classified as FOIA requests, they were not

directed to a FOIA "agency."  Thus, his claims must be dismissed for lack of subject matter

jurisdiction.

      C.    The Court Lacks Jurisdiction Over The Claims Against Congress Because
               Congress Is Not An "Agency" Under FOIA

      Congress is not an "agency" for FOIA purposes and, therefore, not subject to FOIA

requests.  United We Stand Am. v. IRS, 359 F.3d 595, 597 (D.C. Cir. 2004); see also Dow Jones

& Co. v. Dep't of Justice, 917 F.2d 571, 574 (D.C. Cir. 1990) (holding that Congress is not an

agency for any purposes under FOIA).  In United, the court stated that FOIA "does not cover

congressional documents."  Id.  A document prepared for Congress by a FOIA agency is also not

subject to FOIA when Congress has manifested a clear intention to control the document.  Id.

Similarly, members of Congress are not subject to FOIA.  See Owens v. Warner, No. 93-5415,

1994 WL 541335 (D.C. Cir. May 25, 1994) (granting motion for summary affirmance because

Senator Warner's office was not subject to FOIA).  Because the House of Representatives, the

Senate, and Senator Charles Schumer are not subject to FOIA requests, Plaintiff's claims should

be dismissed for lack of subject matter jurisdiction.

      D.    Plaintiff Failed To Exhaust Administrative Remedies Concerning His FOIA
               Requests To State,Treasury, LOC, TSA, and BOP

      Plaintiff further alleges that in 2006, he "propounded a request" to the BOP, the Treasury,

the LOC, State (the Office of Passport Services), and the TSA under the FOIA and the Privacy

Act, and that he did not receive the requested records.  See Compl. at ¶ 6-7.  He does not describe

with specificity his requests to the Treasury, State, the LOC, or the TSA.  He alleges to have

sought BOP records containing information regarding why he was placed in the Special Housing

Unit ("SHU") on December 28, 2006.  See Compl. at ¶ 3.  Plaintiff provides no additional

information about his requests.

Plaintiff must exhaust his administrative remedies before he can seek judicial review of a

FOIA request.  Exhaustion of administrative remedies "is a mandatory prerequisite to a lawsuit

under FOIA." Wilbur v. CIA, 355 F.3d 675, 676 (D.C. Cir. 2004)(per curiam)(citing Oglesby v.

U.S. Dep't of the Army, 920 F.2d 57, 61-64, 65 n.9 (D.C. Cir. 1990)).  In Wilbur, the Court

noted that it is not necessarily a jurisdictional requirement because "the FOIA does not

unequivocally make it so."  Id. at 677 (quoting Hidalgo v. FBI, 344 F.3d 1256, 1258 (D.C. Cir.

2003)).  Nonetheless "as a jurisprudential doctrine, failure to exhaust precludes judicial review if

'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar." Id.

(quoting Hidalgo at 1258-59).  However, when a plaintiff's failure to exhaust administrative

remedies does not comport with the purposes of exhaustion, his claim should be dismissed.  See

Schoenman v. F.B.I., No. 04-2202CKK, 2006 WL 1582253, *12 (D.D.C. June 5, 2006)

(plaintiff's FOIA count was dismissed because he did not provide proof that he exhausted his

administrative remedies by filing a timely appeal); see also Bestor v. C.I.A., No. 04-2049RWR,

2005 WL 3273723, *3 (D.D.C. Sept. 1, 2005) (prudential considerations required court to

dismiss FOIA complaint because FOIA request was filed on same day as complaint and thus

would not allow purpose of administrative remedies to be served).  When a plaintiff fails to

exhaust his administrative remedies, dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) for

failure to state a claim upon which relief can be granted.  See Hidalgo, 344 F.3d at 1260; see also

Bestor, 2005 WL 3273723 at *3.  Further, when a plaintiff fails to file a FOIA request, he cannot then state a valid claim against an agency.  See West v. Jackson, 448 F. Supp. 2d 207, 211 (D.D.C. 2006) (dismissing plaintiff's FOIA claim based upon agency affidavits which stated that no FOIA requests were received).

Like the FOIA, the Privacy Act includes an administrative exhaustion requirement under which an individual must make a request to the agency for access to, or amendment of, the agency's records.  See 5 U.S.C. § 552a(f)(4) (requiring agencies to establish procedures for reviewing Privacy Act requests for access to or amendment of records and for considering appeals of initial adverse agency determinations).  If not satisfied with the agency's response to such request, the individual must administratively appeal the agency's decision prior to seeking judicial review.  See Haase v. Sessions, 893 F.2d 370, 373 (D.C. Cir. 1990); Clemmons v. U.S. Dept. of Justice, No. 06-00305RCL, 2007 WL 1020796, *5 (D.D.C. Mar. 30, 2007).

In this case, Plaintiff has not exhausted his administrative remedies because he did not submit FOIA requests to the Treasury, State, the LOC, or the TSA.  The aforementioned agencies have adequately searched their records for FOIA requests from Plaintiff, and have found none. See Declaration of Kevin J. Janet ("Janet Decl.") at ¶¶ 3-4 (a TSA database search in the categories of requestor, companies, and subject of requested document for "Frederick Banks" and "Vampire Nation" from September 2002 to June 2007 yielded no results, and Janet concluded that Plaintiff nor the Vampire Nation has filed a FOIA request with the TSA); Declaration of Hugh Gilmore ("Gilmore Decl.") at ¶¶ 6,9 (search of the Treasury tracking database for Plaintiff's name and "Vampire Nation" found no FOIA requests); Declaration of Deborah Ramsey ("Ramsey Decl.") at ¶¶ 7-8 (LOC subjects itself to FOIA, but no requests were found

9

from Plaintiff after database search); Declaration of Margaret G. Peppe ("Peppe Decl.") at ¶¶ 6-9

(State Department found no FOIA requests, and Passport Office found no non-FOIA requests

from Plaintiff).  The BOP found three FOIA requests made by Plaintiff, all of which were

processed by June 28, 2006, which is prior to the time Plaintiff was confined at FCC Butner.  See

Declaration of Lynnell Cox ("Cox Decl.")at ¶ 6.  However, none of these requests pertain to the

investigation by the Butner staff or about Plaintiff's placement in the SHU.  See id.  Therefore,

the BOP has not received the FOIA request Plaintiff refers to in his Complaint.  Plaintiff has not

availed himself of the administrative process.  Therefore, he failed to state cognizable FOIA

claims, and those claims against the Treasury, State, the LOC, the TSA and the BOP[6] should be

dismissed without prejudice.

In the alternative, summary judgment is appropriate because the affidavits submitted by

the Defendants show that there is no issue of material fact as to whether Plaintiff submitted FOIA

requests.  Fed. R. Civ. P. 56.

E.    Plaintiff's FOIA Claim Against DOJ Should Be Dismissed Or A More Definite
       Statement Should Be Required

Under the Federal Rules, the principal function of the Complaint is to give the Defendant

---

[6] Even if the BOP had received Plaintiff's FOIA/Privacy Act request, dismissal would nevertheless be appropriate.  Because Plaintiff's request for records purportedly sought information regarding why he was placed in the SHU on December 28, 2006, the earliest Plaintiff would have had reason to submit such request was December 28, 2006.  Assuming that request was received by the BOP on December 28, the BOP would have had twenty days ( until January 17, 2007) to determine whether to grant or deny the request.  See 5 U.S.C. § 552(a)(6)(A)(i); see also 28 C.F.R. § 513.50 (indicating Privacy Act requests received by the BOP are considered in accordance with the FOIA).  Plaintiff's Complaint was received by the Clerk's Office on January 5, 2007, prior to the expiration of the BOP's twenty day deadline for making a determination as to Plaintiff's purported FOIA/Privacy Act request.  Therefore, even if Plaintiff has sent a FOIA request on the earliest date possible, his claim in this Court was brought prematurely.

fair notice of the claims asserted so that the Defendant can make an adequate response, either by answer or dispositive motion.  Here, the Plaintiff fails to meet these minimal requirements as to his FOIA claim against the DOJ.

Rule 8(a), Fed. R. Civ. P., states that a claim:

> [S]hall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

Id.  Similarly, Rule 10(b), Fed. R. Civ. P., requires that:

> All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings.  Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.

Id.

"The purpose of [Rule 8(a)] is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  Brown v. Califano, 75 F.R.D. 497, 498 (D.D.C. 1977) (citing 2A Moore, Federal Practice  8.13; 5 Wright & Miller, Federal Practice and Procedure, § 1217).  "Beyond this, the rule serves to sharpen the issues to be litigated . . . ."  Brown, 75 F.R.D. at 498 (dismissing pro se plaintiff's complaint because it failed to reasonably inform the adverse party of the cause of action).  Because Plaintiff's FOIA count against the DOJ has failed to comply with the Federal Rules, it should be dismissed.

The DOJ has multiple components, including the Bureau of Prisons, the Federal Bureau

11

of Investigation, and the U.S. Attorney's Offices.  Plaintiff did not identify to which component he sent his FOIA request.  DOJ requires all FOIA requests to be made to the Department component that maintains those records.  See 28 C.F.R. § 16.3(a).  By not specifying to which component he directed his request, Plaintiff has not provided Defendant DOJ with adequate information to form a response and prepare a defense, and his claim should be dismissed.

Alternatively, the Court should enter an order pursuant to Fed. R. Civ. P. 12(e), requiring Plaintiff to amend his Complaint in order to make "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Fed. R. Civ. P. 12(e) provides that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."

A more definite statement of Plaintiff's claims is necessary to allow Defendant DOJ to prepare a defense.  Without a more definite statement, the DOJ cannot ascertain which Department component might have received his FOIA request.  This information is essential to forming Defendant's response.  If Plaintiff's claim is not dismissed, this Court should require a more definite statement of the FOIA claim against the DOJ.

## III.    Plaintiff's Constitutional Claims

### A.    Plaintiff Failed To Exhaust His Administrative Remedies

Plaintiff alleges Defendants violated his constitutional rights by placing him in the SHU without just cause, with discriminatory intent, and for the purpose of restricting his religious practice and access to the courts.  See Compl. at ¶¶3-5, 8-10.  He also appears to allege a constitutional cause of action against Defendants for defamation.  See id. at ¶ 14.  Plaintiff,

12

however, has not exhausted his administrative remedies with respect to these claims.

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In short, the PLRA mandates that prisoners exhaust all available administrative remedies prior to filing federal actions regarding the conditions of their confinement. See Woodford v. Ngo, ___ U.S. ___, 126 S.Ct. 2378, 2382-83 (2006); Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 675 (4th Cir. 2005). The Supreme Court has held that it "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). Exhaustion under the PLRA requires "proper exhaustion", and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." See Woodford, 126 S.Ct. at 2386-88.

The BOP has established a four-step administrative remedy process through which a current or former BOP inmate can seek review of any issue regarding any aspect of his confinement. See 28 C.F.R. §§ 542.10-542.19. Under this process, an inmate first attempts resolution of the complaint informally by discussing the matter with a member of the inmate's Unit Team. This attempt at resolution is documented on a "BP-8" form. If not satisfied, the inmate may file a formal complaint, called a "BP-9," with the Warden within twenty days of the date on which the basis of the complaint occurred. Id. § 542.13. The Warden must respond to

13

the filed request within 20 days.  Id. § 542.18.  If not satisfied with the Warden's response, the

inmate may appeal to the Regional Director via a "BP-10" within twenty days of the date the

Warden signed the response.  The Regional Director must respond to the filed appeal within 30

days.  Id. § 542.18.  If not satisfied with the Regional Director's response, the inmate may submit

a "BP-11" appeal to the Office of General Counsel in Washington, D.C.,  within thirty calender

days of the date the Regional Director signed the response.  The General Counsel must respond

within 40 days of the filed appeal.  An appeal to the Office of General Counsel is the final

administrative appeal in the Bureau of Prisons.  Id. § 542.15.  Where an inmate demonstrates a

valid reason for submitting an untimely administrative request or appeal, the BOP may grant an

extension of time to file.  Id. § 542.14.  If an inmate does not receive a response within the time

allotted for a reply by the BOP, the inmate may consider the absence of a response a denial at that

level. Id. § 542.18.

Here, Plaintiff has not pursued any administrative remedies regarding the PLRA claims

he asserts in this lawsuit.  See Cox Decl. at ¶ 5; Compl. at  ¶ 4.  Plaintiff attempts to excuse his

failure to exhaust by alleging that, during his confinement in the SHU, Defendants refused to

provide him with the forms necessary to pursue his administrative remedies.  Specifically, he

alleges that Defendants "ignored his multiple requests for BP 8's 9's 10's and 11's to exhaust in

this action."  Compl. at ¶ 4.  Based on that assertion alone, he contends that he should be deemed

to have exhausted his administrative remedies.

However, the PLRA contains no futility exception that would excuse a failure to exhaust

administrative remedies.  See Booth, 204 F.3d at 73.  The evidence reveals that Plaintiff never

filed any administrative remedies with the BOP with regard to the constitutional claims presented

14

in this litigation.  See Cox Decl. at ¶ 5.  Although Plaintiff alleges that he made "multiple requests" for administrative remedy forms while confined in segregation, he presents no evidence that he made one such request.  Accordingly, because the evidence shows that Plaintiff has not exhausted his available BOP administrative remedies regarding his constitutional claims, such claims should be dismissed for failure to exhaust administrative remedies.[7]

 B. This Court Lacks Personal Jurisdiction Over The Individual Defendants

 To the extent that Plaintiff alleges Bivens-type claims, he has not shown that the individually named BOP Defendants are residents of the District of Columbia.  Therefore, there is no personal jurisdiction.  Because Bivens suits are brought against government officials in their individual, rather than official capacities, personal jurisdiction over the individual defendants is required to maintain a Bivens claim.  See Robertson v. Merola, 895 F. Supp. 1, 3 (D.D.C. 1995); Deutsch v. U.S. Dept. of Justice, 881 F. Supp. 49, 52 (D.D.C. 1995), aff'd, 93 F.3d 986 (D.C. Cir. 1996).

---

[7] The timing of the events pertinent to this litigation also make Plaintiff's argument regarding exhaustion untenable.  The gravamen of Plaintiff's Bivens claims is that Defendants violated his rights by placing him in the SHU at FCC Butner on December 28, 2006.  As Plaintiff was not placed in the SHU until December 28, 2006, he would have had no reason to initiate the administrative remedy process until that date, at the earliest.  Had he filed a BP-9 request with the Warden on December 28, 2006, the Warden would have had 20 days from that date, i.e. until January 17, 2007, to respond to the request.  See 28 C.F.R. § 542.18.  Notably, an inmate may not appeal to the next level until after the time for reply to the administrative request has expired. Id. § 542.  Following the Warden's response or lack thereof, Plaintiff was required under the BOP's administrative remedy process to appeal to the Regional Director and General Counsel prior to initiating the instant Bivens action.  The instant Complaint was received for filing in the Clerk's office on January 5, 2007, only eight days after Plaintiff was placed in the SHU.  See Date Stamp on Complaint.  Based on the above time frame, Plaintiff could not have exhausted his administrative remedies prior to initiating the instant Bivens action.

1. Plaintiff's Burden

It is the Plaintiff who bears the burden of pleading the facts necessary to substantiate *in personam* jurisdiction in this Court. Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999). As explained by this Court in Edmond v. U.S. Postal Service, 727 F. Supp. 7, 10 (D.D.C. 1989), aff'd in part and rev'd in part, 949 F.2d 415 (D. C. Cir. 1991):

> A plaintiff in district court must plead essential jurisdictional facts and must carry throughout the litigation the burden of showing that he is properly in court. "If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

Since Plaintiff fails to plead the facts necessary to substantiate *in personam* jurisdiction, the purported claims against the individually named BOP Defendants should be dismissed for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

2. D.C. Code §13-423, The "Long Arm" Statute

*In personam* jurisdiction may be maintained by the United States District Court for the District of Columbia only if permitted by the "long arm" laws of the District of Columbia. Crane v. Carr, 814 F. 2d 758, 762 (D.C. Cir. 1987). The District of Columbia exercises personal jurisdiction based upon the D.C. Code's "long arm" statute at D.C. Code §13-423 (2000), which states in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's--
> (1) transacting any business in the District of Columbia;
> (2) contracting to supply services in the District of Columbia;
> (3) causing tortuous injury in the District of Columbia by an act or omission

16

in the District of Columbia;
(4) causing tortuous injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
(5) having an interest in, using, or possessing real property in the District of Columbia;
(6) contracting to insure or act as surety . . . ; or
(7) marital or parent and child relationship. . . .

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

In this case, Plaintiff's Complaint does not establish proper *in personam* jurisdiction in the United States District Court for the District of Columbia under § 13-423.  The Defendants are clearly outside the "long arm" of this statute.  They have not: (1) transacted business in the District of Columbia; (2) contracted to supply services in the District of Columbia; (3) caused any tortuous injury in the District of Columbia; and (4) do not own any real property in the District of Columbia.  See Declaration of Patricia Stansberry ("Stansberry Decl.") at ¶¶ 2-3; Declaration of John Miosi ("Miosi Decl.") at ¶¶ 2-3;  Declaration of Daniel Greene ("Greene Decl.") at ¶¶ 2-3; Declaration of Walter Harris ("Harris Decl.") at ¶¶ 2-3; Declaration of Michael Allen ("Allen Decl.") at ¶¶ 2-3; Declaration of Robert E. Dodson ("Dodson Decl.") at ¶¶ 2-3.  *In personam* jurisdiction cannot be predicated on the provisions of the sections (a)(3) and (4) of the "long arm" statute because the Plaintiff cannot establish that the federal employees at FCC Butner caused him injury within the District of Columbia.  Because the injuries about which the Plaintiff complains occurred in North Carolina, this Court lacks personal jurisdiction over the Defendants who allegedly caused those injuries.  See Farmer v. Moritsugu, 163 F.3d 610 (D.C.

17

Cir. 1998) (local medical staff treating in BOP institutions outside D.C. not subject to personal

jurisdiction); <u>Meyer v. Federal Bureau of Prisons</u>, 940 F. Supp. 9 (D. D.C. 1996) (No personal

jurisdiction over Bureau of Prisons case manager working in Rochester, Minnesota, sued in D.C.

in individual capacity by inmate based upon claimed inaccuracy of prison records).

3.  <u>In Personam Jurisdiction Requires "Minimum Contacts"</u>

In order for the District Court for the District of Columbia to have personal jurisdiction

over a non-resident defendant, jurisdiction must be proper under both the District of Columbia

long-arm statute and consistent with the demands of due process.  <u>United States v. Ferrara</u>, 54

F.3d 825, 828 (D.C. Cir. 1995); <u>Crane v. Carr</u>, 814 F.2d 758, 762 (D.C. Cir. 1987).  "Since the

District of Columbia's long-arm statute has been held to extend as far as the Due Process Clause

allows, <u>Mouzavires v. Baxter</u>, 434 A.2d 988 (D.C. 1981) (<u>en banc</u>), <u>cert. denied</u>, 455 U.S. 1006

(1982), personal jurisdiction exists when the defendant has purposely established minimum

contacts with the forum state and when the exercise of jurisdiction comports with 'traditional

notions of fair play and substantial justice.' <u>Asahi Metal Indus. Co. v. Superior Court of Cal.</u>,

480 U.S. 102 (1987)."  <u>Wiggins v. Equifax Inc.</u>, 853 F. Supp. 500, 502 (D.D.C. 1994).

"Plaintiff's  claim for relief must arise from the defendants' contacts with the District of

Columbia and his 'claims must bear some relation to the acts in the District that are relied upon

to confer personal jurisdiction.' [D.C. Code] § 13-423(b).  <u>Bayles v. K-Mart Corp.</u>, 636 F. Supp.

852, 854 (D.D.C. 1986)."  <u>Id.</u> at 502.

The burden is again on the Plaintiff to establish that this Court can exercise personal

jurisdiction over Defendants consistent with the Due Process Clause.  <u>Blumenthal v. Drudge</u>, 992

F. Supp. 44, 53 (D. D.C. 1998); <u>GTE New Media Servs. Inc.</u>, 199 F.3d 1343, 1347 (D.C. Cir.

18

2000).  Plaintiff in this case has wholly failed to allege such facts, and the allegations against all

these Defendants do not establish "minimum contacts" necessary to confer personal jurisdiction

upon the District Court for the District of Columbia.  The mere fact that some of the Defendants

are employees of the Federal Bureau of Prisons and the Central Office of the agency happens to

be in Washington, D.C., is insufficient to establish the requisite "minimum contacts" with the

District of Columbia.  Cameron v. Thornburgh, 983 F.2d 235, 256 (D.C. Cir. 1993); see James v.

Reno, et al., No. 99-5081, 1999 WL 615084 (D.C. Cir. Jul. 2, 1999) (Inmate's security

classification and transfer request made in Texas; both federal prisons at issue located in Texas;

no injury suffered in the District of Columbia; mere fact that White and Snider are employees of

the Bureau of Prisons based in D.C. insufficient to establish requisite "minimum contacts" with

District); Meyer v. Reno, 911 F. Supp. 11, 14 (D.D.C. 1996) (Bureau of Prisons employee who

works at FCI Memphis, Tennessee and three Florida State Attorneys not alleged to conduct any

business or make any contracts for services and no injury alleged to have been suffered in the

District of Columbia, so court cannot exercise jurisdiction over them); Dickson v. United States,

831 F. Supp. 893, 897 (D.D.C. 1993) (concluding that plaintiff failed to allege minimum contacts

where he listed the District of Columbia mailing addresses at the CIA for defendants, but

presented no factual connection between the defendants' activities as individuals and the

District).

The presence in the District of Columbia of the defendants must be "continuous and

systematic" and relative to the claim to meet the "minimum contacts" requirement.  International

Shoe Co. v. Washington, 326 U.S. 310 (1945).  Here, the non-resident Defendants lack the

requisite minimum contacts with the District of Columbia because the operative facts of any

19

claim herein arose in North Carolina.  See Stansberry Decl. at ¶¶ 2-3; Miosi Decl. at ¶¶ 2-3;

Greene Decl. at ¶¶ 2-3; Harris Decl. at ¶¶ 2-3; Allen Decl. at ¶¶ 2-3; Dodson Decl. at ¶¶ 2-3;

Cox. Decl. at ¶¶ 3-4.  Therefore, Defendants' motions to dismiss under Rule 12(b)(2) should be

granted, and they should be dismissed from this suit.

C.    Plaintiff Has Not Perfected Service Against Defendants Stansberry, Dodson,
        Allen, Miosi, Harris, and Green.

        None of the individual Defendants in this action, namely Stansberry, Dodson, Allen,

Miosi, Harris, and Green, were properly served with the Complaint in accordance with the rules

applicable to individual defendants.  Simpkins v. District of Columbia Government, 108 F.3d

366, 369 (D.C. Cir. 1997).  It is well established that, in an action against a federal employee in

his or her individual capacity, the individually-sued defendant must be served with process in

accordance with Rule 4(e) of the Federal Rules of Civil Procedure.  Id.  Rule 4(e) provides that

service is effectuated by complying with the laws of the state for such in which the district court

is located by delivering a copy of the summons and complaint to the defendant (or his appointed

agent) personally, or by leaving copies thereof at the defendant dwelling house or usual place of

abode with some person of suitable age and discretion who resides there.  Fed. R. Civ. P. 4(e).

The SCR-Civil 4(e)(2) allows for service upon individuals by first class, certified or registered

mail.  Actual notice will not, of course, substitute for technically proper service under Rule 4 and

will not permit the Court to render a personal judgment against an individually-sued defendant.

Sieg v. Karnes, 693 F.2d 803 (8th Cir. 1982); See also Stafford v. Briggs, 444 U.S. 527 (1980).

        Because the record is devoid of any evidence of proper personal service upon the federal

Defendants in their individual capacities, this lawsuit cannot proceed against them individually

and all claims against the Defendants in their individual capacity should be dismissed.

The District Court will lack jurisdiction over the federal officials, until all of the provisions of Rule 4(i)(1) and (2) are met. Ecclesiastical Order of the Ism of Am, Inc. v. Chasin, 845 F.2d 113, 116 (6th Cir. 1988); Sanchez-Mariani v. Ellingwood, 691 F.2d 592, 594 (1st Cir. 1982). It is the plaintiff in a civil action who has the burden of establishing the validity of service of process. Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993); Lensel Lopez v. Cordero, 659 F. Supp. 889, 890 (P.R. 1987). Therefore, if that cannot be demonstrated, this case should be dismissed based upon insufficiency of process under Rule 12(b)(4). Accordingly, claims against the individual Defendants should be dismissed.[8]

D.   *Respondeat Superior* Liability Is Not Available In Bivens

Additionally, Defendant Harley Lappin is not personally liable for constitutional torts of employees he supervises under the doctrine of *respondeat superior*. Monell v. Department of Social Services, 436 U.S. 658 (1978); Cameron v. Thornburgh, 983 F.2d 253, 258 (D.C. Cir. 1993); Meyer v. Reno, 911 F. Supp. 11, 15 (D.D.C. 1996). In Cameron, the D.C. Circuit dismissed the Attorney General and Director from the suit because the complaint failed to allege

---

[8]  Even if Plaintiff were to personally serve the named Defendants, such federal officers enjoy qualified immunity from constitutional and statutory claims. Cleavinger v. Saxner, 474 U.S. 193, 206 (1985); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Government officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818; Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998); see also Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)("[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery").

their personal involvement and was based solely "on the bare assumption" that policy decisions

in the District of Columbia influenced the prisoner's treatment in a federal prison in Indiana. Id.

at 258.

In the Meyer case, 911 F. Supp. at 15, this Court discussed *respondeat superior* within

the context of federal inmate lawsuits:

> Absent any allegations that defendants Reno and Hawk personally participated in the events which gave rise to the plaintiff's claims, or any corroborative allegations to support the inference that these defendants had notice of or acquiesced in the improper securing of detainers against the plaintiff by their subordinates, dismissal is appropriate. See Haynesworth v. Miller, 820 F.2d 1245, 1259 (D.C. Cir. 1987) (fellow government employees cannot be held liable under the theory of *respondeat superior* for either constitutional or common law torts); Smith-Bey v. District of Columbia, 546 F. Supp. 813, 814 (D.D.C. 1982) (same). *Respondeat superior* has been consistently rejected as a basis for the imposition of § 1983 or Bivens liability. See, e.g., Monell v. Dep't of Social Srvcs., 436 U.S. 658, 691 (1978); Rizzo v. Goode, 423 U.S. 362 (1976); Boykin v. District of Columbia, 689 F.2d 1092, 1097-99 (D.C. Cir. 1982); and Tarpley v. Greene, 684 F.2d 1, 9-11 (D.C. Cir. 1982). Therefore, any potential § 1983 or Bivens claims against these defendants, whose only relationship to the instant litigation is their ultimate supervisory status, must be dismissed.

"Without a showing of direct responsibility for the improper action, liability will not lie against a

supervisory official. A causal connection, or an affirmative link, between the misconduct

complained of and the official sued is necessary." Wolf-Lillie v. Sonquist, 699 F.2d 864, 869

(7th Cir. 1983). Individual liability for damages for violation of constitutional rights is

predicated upon personal responsibility. Schultz v. Baumgart, 738 F.2d 231, 238 (7th Cir. 1984).

Plaintiff claims that Lappin "authorized the activity of [the individual defendants] by giving the

go ahead to 'set ups' from his boardroom in Washington D.C. in accordance with his de facto

policies. . ." See Compl. at ¶ 3. Just as in the Cameron case, the Plaintiff seems to be basing his

claim against the defendant in his individual capacity on an assumption that based on his

position, he bears responsibility for the acts of his subordinates.  This is an insufficient basis

upon which to maintain a Bivens claim.  See Bivens v. Six Unknown Agents of Federal Bureau

of Narcotics, 403 U.S. 388 (1971).

Therefore, Defendant Lappin should be dismissed for failure to state a claim upon which

relief can be granted under Fed. R. Civ. P. 12(b)(6).

**IV.  The United States Shall Be Substituted As Defendant In This Action For Plaintiff's Tort Claims And These Claims Should Be Dismissed**

A.    The United States Should Be Substituted

In this case, Plaintiff filed suit against Robert E. Dodson, Michael Allen, Walter Harris,

John Miosi, and Daniel Greene, all of whom are employees at the Federal Correctional Complex

in Butner, North Carolina, alleging a tort arising from their actions taken as federal employees.[9]

See Compl. at ¶¶ 4, 14.  When a federal employee is sued for a wrongful or negligent act, the

United States Attorney General, or by designation the United States Attorney in the district where

the claim is brought (or his designee), may certify that the employee was acting at the time within

the scope of his employment.  See 28 U.S.C. § 2679(d)(1).  Specifically, this statute provides:

> Upon certification by the Attorney General that the defendant employee was
> acting within the scope of his office or employment at the time of the incident out
> of which the claim arose, any civil action or proceeding commenced upon such
> claim in a United States district court shall be deemed an action against the United
> States under the provisions of this title and all references thereto, and the United
> States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1).   In short, where the Attorney General's designee has filed a certification

that the original defendant was acting within the scope of his employment, such certification has

---

[9]    Plaintiff also filed suit against Patricia R. Stansberry, who is the warden at the Federal
Correctional Complex in Petersburg, Virginia.

the following two effects: (1) it requires the substitution of the United States for the federal employee as the defendant in the lawsuit; and (2) it converts the lawsuit into an action against the United States under the FTCA.  See 28 U.S.C. §§ 1346(b), 2671 et seq.; see also Haddon v. United States, 68 F.3d 1420, 1423 (D.C. Cir. 1995); Vanover, 77 F. Supp.2d at 97.

_____Included with this Motion to Dismiss is a corrected Certification of Rudolph Contreras, Civil Chief, United States Attorneys Office for the District of Columbia, certifying that Defendants Patricia R. Stansberry, Robert E. Dodson, Michael Allen, Walter Harris, John Miosi, and Daniel Greene were acting within the scope of their authority as employees of the United States at the time of the alleged incident.  See Certification (attached hereto).  Accordingly, the suit becomes one against the United States under the FTCA.  See Haddon, 68 F.3d at 1423; Gustave-Schmidt v. Chao, 226 F. Supp.2d 191, 200 (D.D.C. 2002).

Once the United States is substituted as the sole defendant for the common law tort claims, all defenses apply as if it had been sued in the first instance.  See 28 U.S.C. § 2674..  Accordingly, Plaintiff's common law tort claims should be dismissed because Plaintiff has not exhausted his administrative remedies under the FTCA and sovereign immunity has not been waived for the claims alleged by Plaintiff.

B.    This Court Lacks Subject Matter Jurisdiction To Hear This Action

_____The doctrine of sovereign immunity bars all suits against the United States except where such immunity is expressly waived by Congress.  See United States v. Testan, 424 U.S. 392, 399 (1976).  The sovereign immunity of the United States protects it and its agencies from suit absent an express waiver.  See FDIC v. Meyer, 510 U.S. 471, 484-86 (1994); United States v. Nordic Village, 503 U.S. 30, 33-34 (1992) (waivers must be "unequivocally expressed"); United States

24

v. Mitchell, 445 U.S. 535, 538 (1980); Information Sys. & Networks Corp. v. United States Department of Health & Human Servs., 970 F. Supp. 1, 3 (D.D.C. 1997) ("Defendants, as federal agencies, are immune from suit unless the government has expressly waived that immunity.") (citation omitted).

Sovereign immunity is jurisdictional. As the Supreme Court has recognized, the "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941); see also Alexander v. Americans United, Inc., 416 U.S. 752, 767 n.5 (1974) (Blackmun, J., dissenting). When a plaintiff seeks monetary relief for torts against the United States or a department of the United States, the only possible basis for relief is under the FTCA. The FTCA authorizes district courts to hear suits against the United States

> for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b); see also Cope v. Scott, 45 F.3d 445, 447 (D.C. Cir. 1995).

    1.    Plaintiff Has Not Exhausted His Administrative Remedies Under The FTCA

The FTCA mandates that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing by certified or registered mail of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b) (emphasis added); Kubrick v. United States, 444 U.S. 111, 117-18 (1979)

(noting that Courts are not to extend this waiver of sovereign immunity beyond what Congress intended).  Although phrased in the disjunctive, "this statute requires a claimant to file an administrative claim within two years [of accrual] and file suit within six months of its denial." Houston v. United States Postal Serv., 823 F.2d 896, 902 (5th Cir. 1987) (emphasis in original) (citing numerous cases). See also Willis v. United States, 719 F.2d 608, 612 (2d Cir. 1983); Schuler v. United States, 628 F.2d 199, 201 (D.C. Cir. 1980).

The FTCA required that Plaintiff file an administrative claim with the Federal Bureau of Prisons prior to instituting this action.  28 U.S.C. § 2401(b).  Plaintiff has not plead that he has done so.  See Altman v. Connally, 456 F.2d 114, 116 (2d Cir. 1972) (complaint deficient because it fails "to allege the presentation of the claim to the appropriate federal agency and a final disposition of the claim by that agency, as required by 28 U.S.C. § 2675.").  Moreover, a search of the LAWPACK database reveals that Plaintiff has not filed an FTCA claim regarding the allegations raised in the instant Complaint.  See Cox Decl. at ¶ 7.  Accordingly, he has failed to exhaust his administrative remedies and this action should be dismissed for lack of subject matter jurisdiction.  Kubrick, 444 U.S. at 117-18.

2..    The United States Has Not Waived Sovereign Immunity For The Claims
       Advanced By Plaintiff

_____The FTCA exposes the United States to liability "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).  The provisions of section 1346(b), however, are subject to certain express exceptions for which the waiver of sovereign immunity has not been extended.  See 28 U.S.C. § 2680.  Specifically, § 2680(h) of Title 28 excepts from

the waiver "[a]ny claim *arising out of* assault, battery, false imprisonment, malicious prosecution, abuse of process, *libel*, *slander*, misrepresentation, deceit, or interference with contract rights."  See 28 U.S.C. § 2680(h) (emphasis added).

_____Plaintiff in this action alleges that Defendants "spread terrible rumors about Banks throughout the compound to staff and inmates . . ."  Because the slander claim is expressly exempt from the FTCA's waiver of sovereign immunity, it must be dismissed for lack of subject matter jurisdiction.  Council on American Islamic Relations v. Ballenger, 444 F.3d 659, 666 (D.C. Cir. 2006); Metz v. United States, 788 F.2d 1528, 1535 (11th Cir. 1986) (Because "the government officials' allegedly slanderous statements are essential to Mr. Metz's action for false light privacy and Ingrid Metz's claim for intentional infliction of emotional distress . . . these claims . . . 'arise out of' slander for the purposes of § 2680(h) and are not actionable under the FTCA.").

## V.    Plaintiff's False Claims Act Claim

_____To establish a *prima facie* case under the False Claims Act, 31 U.S.C. § 3729, a plaintiff must show: (1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent.  See Hutchins v. Wilentz, Goldman, & Spitzer, 253 F.3d 176, 182 (3rd Cir. 2001).  In this case, Plaintiff alleges that the named Defendants wrongfully accepted "paychecks, insurance, and pensions . . ."  See Complaint at ¶ 12.  As Plaintiff fails to allege sufficient facts to satisfy any of the above three elements necessary to establish a *prima facie* case

under the False Claims Act, his claim should be dismissed for failure to state a claim.[10]

## VI.    The Case Should Be Dismissed Or Transferred

      In contrast to an official capacity claim against a federal employee which seeks relief from the United States, an individual-capacity claim against a federal employee seeks recovery from the personal financial assets of the employee.  Hafer v. Melo, 502 U.S. 21, 25 (1991).

Venue for Plaintiff's Bivens claims is governed by the provisions of 28 U.S.C. §1391(b), which provides in applicable part:

> (b)    A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

In Stafford v. Briggs, 444 U.S. 527, 542 (1979), the Supreme Court stated that this provision, rather than the more permissive venue provisions of 28 U.S.C. §1391(e), are applicable in Bivens actions:

> What emerges is that the bill's author, the Committees, and the Congress intended nothing more than to provide nationwide venue for the convenience of individual plaintiffs in actions which are nominally against an individual officer but are in reality against the Government.  A suit for money damages which must be paid out of the pocket of the private individual who happens to be--or formerly was-- employed by the Federal Government plainly is not one "essentially against the United States," and thus is not encompassed by the venue provisions of Section 1391(e).

Noting that Congress did not intend to require "those serving their Government the burden of

---

[10]    Moreover, Plaintiff failed to comply with the procedural requirements of the False Claims Act (e.g. filing a complaint under seal and providing the government with a material disclosure statement).

defending personal damages actions in a variety of distant districts. . . ," Id., 444 U.S. at 545, the Court found that these federal officers should be treated like others who are sued for personal damages, and the provisions of 28 U.S.C. §1391(b) should govern.

Plaintiff has proffered no facts to establish that the federal Defendants reside in the District of Columbia, that the events giving rise to the claim occurred within the District of Columbia, or that Plaintiff resides in the District of Columbia. Therefore, venue is improper in the District of Columbia pursuant to 28 U.S.C. § 1391(b) and Meyer v. Reno, et al., 911 F. Supp. 11, 15 (D.D.C. 1996). Plaintiff's Complaint involves allegations related to his incarceration in North Carolina. Thus, this case should be dismissed under Fed. R. Civ. P. 12(b)(3).

To the extent that any portion of this case might withstand the dismissal arguments made above, it is inappropriately brought in this Court. This is an individual claim that involves factual issues arising in the Eastern District of North Carolina. Section 28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought.

This Circuit has held that cases such as this one should not be heard in the District of Columbia, but should be transferred to the judicial district where the prisoner is incarcerated, pursuant to § 1404(a). ". . . [M]any, if indeed not most, petitions filed by prisoners not confined in the District of Columbia and not sentenced here originally, will tend to involve factors that make transfer to the place of incarceration appropriate." Starnes v. McGuire, 512 F.2d 918, 926 (D.C. Cir. 1974) (en banc). The Court of Appeals recognized that even if venue is technically appropriate, "there is certainly no reason why all cases involving the construction or constitutionality of a federal

29

statute should be litigated in the District of Columbia." Id. at 925.  Rather, where the records,

witnesses, and counsel for the case are located near the prison and there is no issue of national

importance raised by the complaint, "transfer of the complaint to the district of the plaintiff's

incarceration is indicated." Id. at 933; see also Lincoln v. Bureau of Prisons, Civ. No. 96-2325, at

2 (D.D.C. May 2, 1997) ("[t]his Circuit discourages 'carpetbagging' by prisoners who

incarcerated elsewhere.")

     The D.C. Circuit in Starnes set out a number of factors for a district court to use in

deciding whether to transfer a civil case brought by a prisoner incarcerated outside the District of

Columbia.  Those factors are: (1) the prisoner's difficulty of communication with counsel; (2) the

difficulty of transferring the prisoner; (3) the availability of witnesses and files; (4) the speed of

final resolution; and (5) whether the case involves issues of national policy that require the

testimony of high-level administrators located in Washington, D.C.  Starnes, 512 F.2d at 929-33.

     In this case, these factors strongly support the appropriateness of transfer.  Plaintiff is

proceeding *pro se*, thus, communication with counsel is not an issue.  The majority of the

witnesses and records that would be involved in litigating Plaintiff's claims are at FCC Butner in

North Carolina.  There is no national policy challenge.  To the extent this case survives

dismissal, it should be transferred to the Eastern District of North Carolina, where Plaintiff was

housed when the matters giving rise to this Complaint occurred.  It is there that most of the

witnesses and documents involved are located, and where jurisdiction and venue can be readily

achieved.  Defendants urge, however, that dismissal, not transfer, is appropriate.  See Simpkins

v. District of Columbia, 108 F.3d 366 (D.C. Cir. 1997) (appropriate to dismiss insubstantial

Bivens actions rather than transfer).

**CONCLUSION**

For all of the foregoing reasons, this action should be dismissed.  Alternatively,

Defendants request entry of summary judgment.  If Plaintiff's <u>Bivens</u> claims are not dismissed,

this case should be transferred to the Eastern District of North Carolina pursuant to 28 U.S.C.

§1404(a).

Respectfully submitted,

_____s/_____
JEFFREY TAYLOR, D.C. BAR # 498610
United States Attorney

_____s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____s/_____
KAREN L. MELNIK, D.C. BAR # 436452
Assistant United States Attorney
555 4th Street, N.W. Rm. 4112E
Washington, D.C. 20530

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that service of the foregoing Federal Defendants' Motion to

Dismiss or, in the Alternative, for Summary Judgment and For a More Definite Statement, has

been made via Electronic Case Filing and/or mail to plaintiff, Mr. Frederick Banks, Register

Number 05711-068, Unit 2AW, P.O. Box 5000, Yazoo City, MS 39194-5000, on August 7,

2007.


_____
KAREN L. MELNIK D.C. BAR #436452
Assistant United States Attorney

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

FREDERICK BANKS,                    )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )        Case No.: 07-309 (EGS)
                                    )
HARLEY LAPPIN, et al.,              )
                                    )
        Defendants.                 )
_____)

## STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Pursuant to Local Rule 7(h), Defendant respectfully submits this statement of material facts as to which it contends there is no genuine dispute.

### A.  Plaintiff's Background

1.      Plaintiff is currently serving a 123 month aggregate sentence.  See Declaration of Lynnell Cox ("Cox Decl.") at ¶ 4.  From August 23, 2006 to February 14, 2007, Plaintiff was confined at Federal Correction Complex in Butner, North Carolina ("FCC Butner").  Id.  From December 28, 2006 until February 14, 2007, he was confined in administrative segregation in the Special Housing Unit ("SHU") at FCC Butner.  Id.  Plaintiff was Transferred on February 14, 2007 to another facility.  Id.

### B.  Plaintiff's FOIA Requests to the Bureau of Prisons

2.      The Bureau of Prisons ("BOP") maintains a Freedom of Information Act ("FOIA") database which contains information as to whether a person has submitted any FOIA or Privacy Act requests to the BOP, for records and for the

status of any such requests. Cox Decl. at ¶ 1.  A search of the BOP's FOIA

database revealed that Plaintiff Banks has filed a total of three FOIA/Privacy Act

requests with the BOP.  Id. at ¶ 6.  All three requests were received, processed,

and completed by the BOP on or before June 28, 2006, prior to the time that

Plaintiff was confined in FCC Butner.  Id.  None of the requests sought documents

or information pertaining to an investigation conducted by FCC Butner staff in

2006, or pertaining to Plaintiff being placed in the SHU.  Id.  The search also

revealed that Vampire Nation filed no FOIA/Privacy Act requests with the BOP.

Id.

**C.  Plaintiff's FOIA Request to the Office of Passport Services**

3.      The U.S. Department of State's Office of Information Programs and Services

("IPS") is responsible for the receipt, acknowledgment, and processing of external

requests for Department records, including FOIA and Privacy Act requests.  See

Declaration of Margaret G. Peppe at ¶¶ 1-2.  FOIA and Privacy Act requests for

Department of State records must be addressed to IPS.  Id. at ¶ 4.  IPS logs all

incoming FOIA/Privacy Act requests into an automated tracking system which

assigns case control numbers to and tracks the status of each request.  Id. at ¶ 5.

IPS inputs the requestor's name and the request's topic into the tracking system,

and it can be searched by either criteria.  Id.

4.      IPS searched the tracking system for a request for documents from or about

Frederick Banks and/or Vampire Nation.  Id. at ¶ 6.  No request was found.  Id.

Based on the manner of storing and retrieving information, had such a request

2

been received by IPS by a requestor identifying itself as Vampire Nation or

Frederick Banks, that request would have been located through the search.  Id.

5.    The Office of Passport Services ("PPT") typically directs FOIA/Privacy Act

requests which it receives to IPS.  Id. at ¶ 7.  However, PPT has separate access

procedures for requests it receives that are not made pursuant to FOIA or the

Privacy Act.  Id.  IPS asked PPT if it had received a request from Plaintiff or

Vampire Nation during 2006.  Id. at ¶ 8. PPT conducted a search for any requests

and found none through July 12, 2007.  Id. at ¶ 9.  The search was performed by

individuals with knowledge of PPT's system of record keeping.  Id.

**D.  Plaintiff's FOIA Request to the Library of Congress**

6.    The Library of Congress ("LOC") subjects itself to FOIA requests through

internal regulation LCR 1917-3.  See Declaration of Deborah Ramsey at ¶ 3.  The

Records Management Service ("RMS") of the LOC handles the FOIA requests it

receives.  Id. at ¶ 4.  RMS logs each request into a database, assigns it a unique

identifying number, and records the name, address, date of request, date request is

logged, comments field for specifics of request, date of response, comments field

for type and contents of response.  Id.  A search of the RMS database for any

requests filed by Frederick Banks during 2006 and beyond yielded no results.  Id.

at ¶ 7.

**E.  Plaintiff's FOIA Request to the Department of the Treasury**

7.    Upon receipt of a FOIA request, an electronic record is created by entering

relevant information from the requestor into a tracking database.  See Declaration

of Hugh Gilmore at ¶ 5. A search of the database by Mr. Gilmore, FOIA director

for the Treasury, for Frederick Banks and Vampire Nation yielded no results. <u>Id.</u>

at ¶ 1,6.

8.     Mr. Gilmore also contacted other bureaus organized under the Treasury to

ascertain whether they had received any FOIA requests directly from Plaintiff. <u>Id.</u>

at ¶ 7. All of the respective bureau FOIA contacts searched the name and

organization fields of their respective databases to determine if any respective

corresponding fields matched the Plaintiff's name or the organization Vampire

Nation. <u>Id.</u> at ¶ 8. No records were found in these other searches. <u>Id.</u>

**F.  Plaintiff's FOIA Request to the Transportation Security Administration**

9.     The Transportation Security Administration ("TSA") logs all FOIA and Privacy

Act requests it receives into the FileMaker Pro database. <u>See</u> Declaration of

Kevin J. Janet at ¶ 3. The database tracks the processing and disposition of all

FOIA requests. <u>Id.</u> Mr. Janet, the FOIA Officer for the TSA, searched the

database for Frederick Banks and Vampire Nation and the search returned no

results. <u>Id.</u> The categories searched included all requestor names, companies, and

the subject of requested documents from September 2002 to June 2007. <u>Id.</u>

**G.  Plaintiff's Constitutional Claims**

10.    SENTRY is the BOP database which provides detailed information on BOP

inmates, including whether an inmate has filed any administrative requests. <u>See</u>

Declaration of Lynnell Cox ("Cox Decl.") at ¶ 1. SENTRY also tracks whether

an inmate has exhausted his administrative remedies. <u>Id.</u> A search of the

SENTRY system revealed that Plaintiff, as of February 9, 2007, has filed a total of 24 administrative remedy requests. Id. at ¶ 5. None of the requests pertain to discrimination by BOP staff against Plaintiff during his incarceration at FCC Butner, or defamatory statements made by BOP Staff against him. Id.

12.    Patricia Stansberry is employed by the BOP as the Warden at the Federal Correctional Complex in Petersburg, Virginia. See Declaration of Patricia Stansberry at ¶ 1. Her business office is located in Petersburg. Id. at ¶ 2. She does not reside in the District of Columbia, nor does she own any real property in the District of Columbia. Id. at ¶ 3.

13.    John Miosi is employed by the BOP at FCC Butner. See Declaration of John Miosi at ¶ 1. His business office is located in Butner, North Carolina. Id. at ¶ 2. He does not reside in the District of Columbia, nor does he own real property in the District of Columbia. Id. at ¶ 3.

14.    Daniel Greene is employed by the BOP at FCC Butner. See Declaration of Daniel Greene at ¶ 1. His business office is located in Butner, North Carolina. Id. at ¶ 2. He does not reside in the District of Columbia, nor does he own real property in the District of Columbia. Id. at ¶ 3.

15.    Walter Harris is employed by the BOP at FCC Butner. See Declaration of Walter Harris at ¶ 1. His business office is located in Butner, North Carolina. Id. at ¶ 2. He does not reside in the District of Columbia, nor does he own real property in the District of Columbia. Id. at ¶ 3.

16.    Michael Allen is employed by the BOP at FCC Butner. See Declaration of

Michael Allen at ¶ 1.  His business office is located in Butner, North Carolina.  Id. at ¶ 2.  He does not reside in the District of Columbia, nor does he own real property in the District of Columbia.  Id. at ¶ 3.

17.    Robert E. Dodson is employed by the BOP at FCC Butner.  See Declaration of Robert E. Dodson at ¶ 1.  His business office is located in Butner, North Carolina. Id. at ¶ 2.  He does not reside in the District of Columbia, nor does he own real property in the District of Columbia.  Id. at ¶ 3.

**H.    Plaintiff's FTCA Claims**

18.    BOP's LAWPACK database and official BOP records were searched to determine whether Inmate Banks has filed any administrative FTCA claims with the BOP pertaining to allegations that BOP staff at FCC Butner made defamatory statements against him.  See Cox Decl. at ¶ 7.  LAWPACK and records reveal that Inmate Banks has filed five (5) administrative FTCA claims with the BOP.  None of the five claims include allegations of defamation.  See id.  Nor do any of the claims pertain to events that allegedly occurred while Inmate Banks was confined at FCC Butner.  Three of the claims, identified at TRT-NER-2006-04309, TRT-NER-2006-04679, and TRT-NER-2007-00167, pertain to events that purported occurred at a BOP facility in Pennsylvania.  The remaining two claims, identified as TRT-SER-2007-04670 and TRT-SER-2007-05013, pertain to events that purported occurred at a BOP facility in Mississippi.  See id.

6

Respectfully submitted,

_____s/_____

JEFFREY TAYLOR
United States Attorney


_____s/_____

RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____s/_____

KAREN L. MELNIK, D.C. BAR # 436452
Assistant United States Attorney
555 4th Street, N.W. Rm. 4112E
Washington, D.C. 20530

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FREDERICK BANKS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07cv0309 (EGS) |
| | ) |
| HARLEY LAPPIN, <u>et</u> <u>al.</u> | ) |
| | ) |
| Defendants. | ) |
| | ) |

## CERTIFICATION

I, Rudolph Contreras, Chief of the Civil Division, Office of the United States Attorney for

the District of Columbia, acting pursuant to the provisions of 28 U.S.C. § 2679(d), and by virtue

of the authority delegated to the United States Attorney by 28 C.F.R. § 15.4, and first redelegated

to me on March 20, 2006, hereby certify that I have read the complaint in <u>Frederick Banks v.</u>

<u>Harley Lappin et al.</u> No. 07cv0309 (EGS), and that on the basis of the information now available

to me with respect to the incidents alleged therein, I find that the named federal defendants –

Patricia R. Stansberry, Robert E. Dodson, Michael Allen, Walter Harris, John Miosi, and Daniel

Greene – were acting within the scope of their employment as employees of the United States at

the time of the alleged incidents.

August 6, 2007

RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney
Chief, Civil Division

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FREDERICK BANKS,                            )
                                           )
              Plaintiff,                    )
                                           )
v.                                          )  CASE NUMBER 1:07-CV-00309-EGS
                                           )
LAPPIN, ET AL.,                             )
                                           )
              Defendants.                   )

### DECLARATION OF LYNNELL COX

I, LYNNELL COX, hereby declare as follows:

1.       I am employed by the United States Department of Justice, Federal Bureau of Prisons

(BOP), as a Paralegal Specialist at the Federal Correctional Complex in Butner, North Carolina

("FCC Butner").  As part of my official duties, I have access to official records maintained by the

BOP of persons confined at BOP institutions, including electronic records contained in the BOP

SENTRY, Freedom of Information Act ("FOIA"), and LAWPACK computer databases.

SENTRY provides detailed information on BOP inmates, including information detailing

whether an inmate has filed any formal administrative remedy requests with the BOP with regard

to a particular issue and whether the inmate has exhausted his administrative remedies with

regard to that issue.  The FOIA database provides information pertaining to FOIA and Privacy

Act requests submitted to the BOP, including information as to whether a person has submitted

any FOIA or Privacy Act requests to the BOP for records and the status of any such requests.

The LAWPACK database provides information pertaining to administrative Federal Tort Claims

Act (FTCA) claims submitted to the BOP, including information detailing whether an inmate has

filed any administrative FTCA claims with the BOP. As part of my official duties, I am responsible for responding to FOIA and Privacy Act requests for BOP records and am involved in responding to administrative FTCA claims.

2.    The Bureau of Prisons has established a four-step administrative remedy process through which an inmate can seek review of any complaint regarding any aspect of his imprisonment. See 28 C.F.R. §§ 542.10-542.19. Under this process, an inmate first attempts resolution of the complaint informally by discussing the matter with a member of the inmate's Unit Team . This attempt at resolution is documented on a "BP-8" form.    If not satisfied, the inmate may file a formal complaint called a "BP-9" with the Warden within twenty days of the date on which the basis of the complaint occurred. Id. § 542.13. The Warden must generally respond to the filed request within 20 days. Id. § 542.18. If not satisfied with the Warden's response, the inmate may appeal to the Regional Director via a "BP-10" within twenty days of the date the Warden signed the response. Id. 542.15. The Regional Director must generally respond to the filed appeal within 30 days. Id. § 542.18. If not satisfied with the regional response, the inmate may submit a "BP-11" appeal with the Office of General Counsel in Washington, DC  within thirty calender days of the date the Regional Director signed the response. Appeal to the Office of General Counsel is the final administrative appeal in the Bureau of Prisons. Id. § 542.15. The General Counsel must typically respond within 40 days of the filed appeal. If an inmate does not receive a response within the time allotted for reply by the BOP, the inmate may consider the absence of a response a denial at that level. Id. § 542.18.

3.    I understand that BOP inmate Frederick Banks, Register Number 05711-068, and Vampire Nation filed the above captioned litigation on February 9, 2007, alleging among

2

other things that the BOP and other named defendants failed to provide him with copies of
records that he requested in 2006 under the FOIA and the Privacy Act. The records purportedly
sought pertained to a 2006 investigation conducted by FCC Butner staff that resulted in Inmate
Banks being placed in the special housing unit ("SHU") at FCC Butner. I understand that Inmate
Banks makes additional claims in the complaint, including allegations that the BOP and BOP
staff discriminated against him by placing him in the SHU at FCC Butner in December 2006,
made defamatory statements against him, and attempted to curtail his access to the courts.

4.      Inmate Banks is serving the remainder of a 60 month federal sentence he received in the
United States District Court for the Western District of Pennsylvania on February 25, 2005 and a
consecutive 63 month sentence received in the same court on March 10, 2006, for a total 123
month aggregate sentence. His projected release date from this sentence is May 23, 2013. From
August 23, 2006 to February 14, 2007, Inmate Banks was confined at FCC Butner. From
December 28, 2006 until February 14, 2007 of that period, he was confined in administrative
segregation in the SHU. On February 14, 2007, Inmate Banks transferred from FCC Butner to
another BOP facility.

5.      I searched SENTRY to determine whether Inmate Banks has filed any formal
administrative remedy requests with the BOP pertaining to the issues raised in his complaint,
including the circumstances regarding his placement in the SHU and his allegations of
discrimination and defamation. SENTRY reveals that as of February 9, 2007, when inmate
Banks filed the instant lawsuit, he had filed a total of 24 administrative remedy requests. None
of the 24 requests pertain to discrimination by BOP staff against inmate Banks during his
confinement at FCC Butner, placement in the SHU at FCC Butner, or defamatory statements by

3

BOP staff against inmate Banks.

6.      I also searched the BOP's FOIA database to determine whether Inmate Banks or Vampire

Nation has filed any FOIA or Privacy Act requests with the BOP for copies of records relating in

any way to his placement in the SHU at FCC Butner in 2006. The FOIA database indicates that

Vampire Nation has not filed any FOIA/Privacy Act requests with the BOP. The FOIA database

indicates that Inmate Banks has filed a total of three FOIA/Privacy Act requests with the BOP.

All three requests were received, processed, and completed by the BOP on or before June 28,

2006, prior to the time that Inmate Banks was confined at FCC Butner. None of the requests

sought documents or information pertaining to an investigation conducted by FCC Butner staff in

2006 or pertaining to Inmate Banks being placed in the SHU.

7.      I also searched the BOP's LAWPACK database and official BOP records to determine

whether Inmate Banks has filed any administrative FTCA claims with the BOP pertaining to

allegations that BOP staff at FCC Butner made defamatory statements against him. LAWPACK

and records reveal that Inmate Banks has filed five (5) administrative FTCA claims with the

BOP. None of the five claims include allegations of defamation. Nor do any of the claims

pertain to events that allegedly occurred while Inmate Banks was confined at FCC Butner. Three

of the claims, identified as TRT-NER-2006-04309, TRT-NER-2006-04679, TRT-NER-2007-

00167, pertain to events that purportedly occurred at a BOP facility in Pennsylvania. The

remaining two claims, identified as TRT-SER-2007-04670 and TRT-SER-2007-05013, pertain to

events that purportedly occurred at a BOP facility in Mississippi.

4

Pursuant to Title 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing information is true and correct to the best of my knowledge.

Executed this 7th day of August, 2007.

Lynnell Cox
Paralegal Specialist
FCC Butner

5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FREDERICK BANKS,                    )
                                    )
            Plaintiff,              )
                                    )
v.                                  )         CASE NUMBER 1:07-CV-0309
                                    )
LAPPIN, ET AL.,                     )
                                    )
            Defendants.             )

DECLARATION OF PATRICIA R. STANSBERRY

I, PATRICIA R. STANSBERRY, do hereby declare and state as follows:

1.    I am currently employed by the United States Department of Justice, Federal Bureau of

      Prisons, as Warden at the Federal Correctional Complex ("FCC") in Petersburg, Virginia.

2.    My business office is located at the FCC in Petersburg, Virginia.

3.    I do not reside in the District of Columbia, nor do I own any real property in the District

      of Columbia.

4.    Pursuant to Title 28 U.S.C. 1746, I hereby declare under penalty of perjury, that the

      forgoing is true and correct to the best of my knowledge.


Executed this *21* day of June 2007.


                              Patricia R. Stansberry
                              Warden
                              Federal Correctional Complex
                              Petersburg, Virginia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FREDERICK BANKS,                          )
                                          )
                    Plaintiff,            )
                                          )
v.                                        )        CASE NUMBER 1:07-CV-0309
                                          )
LAPPIN, ET AL.,                           )
                                          )
                    Defendants.           )

### DECLARATION OF JOHN MIOSI

I, JOHN MIOSI, do hereby declare and state as follows:

1.    I am currently employed by the United States Department of Justice, Federal Bureau of

      Prisons, as a Tool Room Officer at the Federal Correctional Complex in

      Butner, North Carolina.

2.    My business office is located in Butner, North Carolina.

3.    I do not reside in the District of Columbia, nor do I own any real property in the District

      of Columbia.

4.    Pursuant to Title 28 U.S.C. 1746, I hereby declare under penalty of perjury, that the

      forgoing is true and correct to the best of my knowledge.


Executed this 2t day of June 2007.


                              John Miosi
                              Tool Room Officer
                              Federal Correctional Complex
                              Butner, North Carolina
                              Butner, North Carolina

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FREDERICK BANKS,                          )
                                          )
                  Plaintiff,              )
                                          )
v.                                        )        CASE NUMBER 1:07-CV-0309
                                          )
LAPPIN, ET AL.,                           )
                                          )
                  Defendants.             )

DECLARATION OF DANIEL GREENE

I, DANIEL GREENE, do hereby declare and state as follows:

1.    I am currently employed by the United States Department of Justice, Federal Bureau of

      Prisons, as a Counselor at the Federal Correctional Complex in Butner, North Carolina.

2.    My business office is located in Butner, North Carolina.

3.    I do not reside in the District of Columbia, nor do I own any real property in the District

      of Columbia.

4.    Pursuant to Title 28 U.S.C. 1746, I hereby declare under penalty of perjury, that the

      forgoing is true and correct to the best of my knowledge.


Executed this 26 day of June 2007.

                                          Daniel Greene
                                          Counselor
                                          Federal Correctional Complex
                                          Butner, North Carolina

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FREDERICK BANKS,                              )
                                             )
                    Plaintiff,               )
                                             )
v.                                           )        CASE NUMBER 1:07-CV-0309
                                             )
LAPPIN, ET AL.,                              )
                                             )
                    Defendants.              )

## DECLARATION OF WALTER HARRIS

I, WALTER HARRIS, do hereby declare and state as follows:

1.    I am currently employed by the United States Department of Justice, Federal Bureau of

      Prisons, as a Counselor at the Federal Correctional Complex in Butner, North Carolina.

2.    My business office is located in Butner, North Carolina.

3.    I do not reside in the District of Columbia, nor do I own any real property in the District

      of Columbia.

4.    Pursuant to Title 28 U.S.C. 1746, I hereby declare under penalty of perjury, that the

      forgoing is true and correct to the best of my knowledge.


Executed this _27_ day of June 2007.

                                   _Walter Harris_
                                   Walter Harris
                                   Unit Manager
                                   Federal Correctional Complex
                                   Butner, North Carolina

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FREDERICK BANKS,                              )
                                              )
               Plaintiff,                     )
                                              )
v.                                            )        CASE NUMBER 1:07-CV-0309
                                              )
LAPPIN, ET AL.,                               )
                                              )
               Defendants.                    )

<u>DECLARATION OF MICHAEL ALLEN</u>

I, MICHAEL ALLEN, do hereby declare and state as follows:

1.    I am currently employed by the United States Department of Justice, Federal Bureau of

      Prisons, as a Lieutenant at the Federal Correctional Complex in Butner, North Carolina.

2.    My business office is located in Butner, North Carolina.

3.    I do not reside in the District of Columbia, nor do I own any real property in the District

      of Columbia.

4.    Pursuant to Title 28 U.S.C. 1746, I hereby declare under penalty of perjury, that the

      forgoing is true and correct to the best of my knowledge.

Executed this 27 day of June 2007.

                                              Michael Allen
                                              Lieutenant
                                              Federal Correctional Complex
                                              Butner, North Carolina

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FREDERICK BANKS,                    )
                                    )
                Plaintiff,          )
                                    )
v.                                  )        CASE NUMBER 1:07-CV-0309
                                    )
LAPPIN, ET AL.,                     )
                                    )
                Defendants.         )

## DECLARATION OF ROBERT E. DODSON

I, ROBERT E. DODSON, do hereby declare and state as follows:

1.    I am currently employed by the United States Department of Justice, Federal Bureau of

      Prisons, as a Lieutenant at the Federal Correctional Complex in Butner, North Carolina.

2.    My business office is located in Butner, North Carolina.

3.    I do not reside in the District of Columbia, nor do I own any real property in the District

      of Columbia.

4.    Pursuant to Title 28 U.S.C. 1746, I hereby declare under penalty of perjury, that the

      forgoing is true and correct to the best of my knowledge.


Executed this 25th day of June 2007.

                                        Robert E. Dodson
                                        Lieutenant
                                        Federal Correctional Complex
                                        Butner, North Carolina

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                    )
                                    )
    Frederick Banks                 )
                                    )
            Plaintiff,              )
                                    )
        v.                          )   Civil Action No.
                                    )       07-309
Harley Lappin, et al.               )
                                    )
            Defendants.             )
                                    )
                                    )
```

DECLARATION OF MARGARET G. PEPPE

I, Margaret G. Peppe, declare and state as follows:

1.  I am the Deputy Director of the Department's Office
of Information Programs and Services (IPS) and the
Department's Records Officer.  In the absence of the Director,
as is presently the case, I am the Department official
immediately responsible for responding to requests for records
under the Freedom of Information Act (FOIA), 5 U.S.C. § 552;
the Privacy Act, 5 U.S.C. § 552a; and other applicable records
access provisions.  I have been in the employ of the
Department of State since 1971, and have served with the
Department's Information Access Program for most of my tenure
with the Department.  I am authorized to classify and

2

declassify national security information pursuant to Executive Order (E.O) 12958, as amended, and Department of State regulations set forth in 22 C.F.R. §§ 9.7 and 9.14. I make the following statements based upon my personal knowledge, which in turn is based on a personal review of the records in the case file established for responding to this litigation, and upon information furnished to me in the course of my official duties. I have read the complaint filed by the plaintiff in the above-captioned matter, and I am familiar with the efforts of Department personnel to locate any and all requests that plaintiff claims to have submitted.

2. IPS is responsible for the receipt, acknowledgement, and processing of external requests for Department records. External requests include those that have been made by the general public (under the FOIA, the Privacy Act, or the Mandatory Declassification Review requirements of E.O 12958), members of Congress, other government agencies, and those that have been made pursuant to judicial processes, such as subpoenas, court orders, and discovery requests. IPS also provides retrieval services for computerized paper records that are maintained in the Central Foreign Policy File, the Department's principal records system; reviews for disclosure Department records dealing with general foreign policy of the United States; and, in general, coordinates all search and

*Frederick Banks v. Harley Lappin, et al.*
*Peppe Declaration*

3

review action in response to external requests for Department records.

3. Through the exercise of my official duties, I have become familiar with the background of this case and have read a copy of the complaint filed by plaintiff.

4. As explained in the Department's regulations (22 C.F.R. § 171) and on the Department's website, FOIA or Privacy Act requests for Department of State records must be addressed to IPS.

5. IPS maintains an automated case tracking system which assigns case control numbers to, and tracks the status of, all FOIA and Privacy Act requests received by IPS. IPS logs all incoming FOIA and Privacy Act requests into this automated case tracking system, and inputs information about each request into the system (including, but not limited to, the requester's name and/or organization and, in the case of FOIA requests, the request's topic). All requesters are then notified of the case control numbers assigned to their requests. It is our custom to refer to the case control numbers in all correspondence with requesters. The automated case tracking system is text searchable on a field-by-field basis.

6. After receiving notice of this lawsuit, IPS searched appropriate fields in the automated case tracking system

*Frederick Banks v. Harley Lappin, et al.*
*Peppe Declaration*

4

described above for a request from or about Frederick Banks
and/or Vampire Nation for the time period January 1, 2006 to
the approximate date plaintiff's complaint was served on the
Department, June 4, 2007.  In addition, IPS conducted another
search up to July 17, 2007.  Using this method, I can state
that there was no record that any FOIA or Privacy Act request
had been received in IPS from or about either Vampire Nation
or Frederick Banks during the relevant time period.  Based on
the manner of storing and retrieving this information in the
ordinary course of business within IPS, I can attest that had
such a request been received by IPS from a requester
identifying itself as Vampire Nation or Frederick Banks, that
request would have been located through the search conducted.
Further, had IPS received any FOIA or Privacy Act request from
plaintiff, the request would have been assigned a case control
number, and plaintiff would have been notified of that case
control number.

7.  Plaintiff alleges that he filed a FOIA and/or Privacy
Act request with the Office of Passport Services "during 2006"
for records that pertain to plaintiff Banks and Vampire
Nation.  The Office of Passport Services (PPT) is the
custodian of the passport files for the Department of State.
PPT maintains United States passport records for passports
issued from 1925 to present.  These records normally consist

*Frederick Banks v. Harley Lappin, et al.*
*Peppe Declaration*

5

of applications for United States passports and supporting

evidence of United States citizenship.  Because IPS is the

Department's centralized FOIA office, when PPT receives a FOIA

or Privacy Act request, PPT typically refers the request to

IPS for logging into IPS' automated case tracking system,

assignment of a case control number and a written

acknowledgment to the requester of the Department's receipt of

the request.  However, PPT has separate records access

procedures for requests it receives that are not made pursuant

to the FOIA or the Privacy Act.

    8.  IPS asked PPT whether it had received a request from

the plaintiff or Vampire Nation during 2006.  PPT informed IPS

that it had conducted a search of the records of the two

offices within PPT that normally process requests for passport

records.  PPT conducted a search for any request from or about

plaintiff Frederick Banks or Vampire Nation, and included an

investigation as to whether anyone had ever conducted a search

for plaintiff's passport record(s).

    9.  The PPT search yielded no indication that any type of

request had been received by the Department from or about

Frederick Banks or Vampire Nation during 2006 (or since then,

for that matter, through July 12, 2007).  The search was

performed by individuals employed within PPT who are familiar

with both the subject matter of the alleged request and the

*Frederick Banks v. Harley Lappin, et al.*
*Peppe Declaration*

6

relevant records system holdings of the office.  There is no other records system within PPT that would have a reasonable possibility of containing evidence of a request for plaintiff's records.

10.  In sum, all FOIA and Privacy Act requests must be received by IPS.  IPS found no record of receiving any request from plaintiff, and plaintiff did not refer in his complaint to any case control number assigned by the Department. Further, the records systems within PPT reasonably expected to contain evidence of any request for plaintiff's records were searched with negative results.  Therefore, I have concluded that, for the relevant time period, the Department did not receive any FOIA or Privacy Act request from plaintiff or any request for plaintiff's passport records.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this __1st__ day of August, 2007.


_Margaret G. Peppe_
Margaret G. Peppe


*Frederick Banks v. Harley Lappin, et al.*
*Peppe Declaration*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FREDERICK BANKS,        )
                                      )
     Plaintiff,               )
                                      )
v.                                         )    Civil Action No. 07-0309 (EGS)
                                      )
HARRY LAPPIN, *et .al.*,        )
                                      )
     Defendant.          )
                                      )

## DECLARATION OF HUGH GILMORE

Pursuant to 28 U.S.C. § 1746, I, Hugh Gilmore, declare the following to be a true and correct statement of facts:

1.       I am the Freedom of Information Act ("FOIA") Director for the U.S. Department of the Treasury ("Treasury") and have held that position since May 2006.  Prior to my current position, I worked for five years at the U.S. Department of Agriculture, Animal and Plant Health Inspection Service as a Supervisory FOIA Program Analyst and was a FOIA Program Analyst for eleven years at the Office of Thrift Supervision, a bureau of Treasury. I am also a member of the Massachusetts Bar.

2.       In my capacity as the FOIA Director, I am responsible for Treasury's efforts with regard to FOIA.  I am familiar with Treasury's procedures for processing FOIA requests generally as well as Treasury's FOIA processing manual and its FOIA regulations.

1

**Frederick Banks's FOIA Request**

3.    I was first made aware of Mr. Frederick Banks's FOIA Request on June 12, 2007, when the United States Attorney's Office, U.S. Department of Justice, faxed to me Mr. Banks's lawsuit. Upon receipt of the lawsuit, I forwarded an electronic copy to Tom McGivern of the Office of General Counsel at the Department of Treasury.

4.    Upon review of the lawsuit, I determined that the FOIA request would need to be located in order to determine the nature of the plaintiff's allegations in the lawsuit.

5.    In my office, upon receipt of a FOIA request, an electronic record is created by entering relevant information from the requester into a tracking database. This process allows my office to maintain an electronic record of all FOIA requests.

6.    I searched the tracking database for information under the name of the plaintiff as well as the organization, "Vampire Nation." I also searched derivations of both his name and that organization. The search found no record of Mr. Banks's FOIA Request.

7.    I also solicited the FOIA contacts from the various bureaus of Treasury[1] to ascertain whether they had received the request directly from the plaintiff without forwarding the request to my office. A copy of the lawsuit was forwarded electronically to each bureau contact.

8.    All of the respective bureau FOIA contacts searched the name and organization fields of their respective databases to determine if any respective corresponding fields matched

---

[1] Treasury has bureaus within the Department, such as the Internal Revenue Service.

2

the plaintiff's name or the organization mentioned in the complaint. No records were found of

Mr. Banks's FOIA Request at the bureaus.

9.     Based on this information, my determination is that Treasury is unable to locate a

FOIA request from the plaintiff or from the organization mentioned in his complaint.


I declare under penalty of perjury that the matters set forth in this Declaration are within

my official purview and are correct and true to the best of my information, knowledge, and

belief.

Executed this _____ day of July, 2007.


Hugh Gilmore
Director
Disclosure Services
U.S. Department of the Treasury

3

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

FREDERICK BANKS, *et al.*,          )
                                    )
                                    )
                                    )
                    Plaintiffs,     )
                                    )       CASE NO. 07-309 EGS
            v.                      )
                                    )
HARLEY LAPPIN, *et al.*,            )
                                    )
                    Defendants.     )

## DECLARATION OF KEVIN J. JANET

I, Kevin J. Janet, do hereby declare as follows:

1.      I am the Freedom of Information Act (FOIA) Officer for the Transportation Security

Administration (TSA) within the U.S. Department of Homeland Security (DHS).  I am responsible

for processing all requests made to TSA under the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5

U.S.C. § 552a, for initiating searches for records relevant to such requests, and for supervising the

determination of what records or portions thereof should be disclosed.  I have held this position

since February 18, 2007 to present.

2.      My office is located at TSA Headquarters, 601 South 12th Street, Arlington, VA

22202.

3.    I have personally conducted a search for any request filed by Frederick Banks or the Vampire Nation from 2002 until the present. This search was conducted in the FileMaker Pro database, the Agency record for tracking processing and disposition of all FOIA and Privacy Act requests filed with TSA. A query was run within this database for "Fredrick Banks" and "Vampire Nation" with negative results. The categories searched included all requestor names, companies, and the subject of requested documents from September 2002 to June 2007.

4.    My search for such a request from Frederick Banks and/or the Vampire Nation proved negative, leading me to conclude that neither Mr. Banks nor the Vampire Nation filed a FOIA request for records with TSA.

I declare under penalty of perjury that the foregoing is true and correct in accordance with 28 U.S.C. § 1746.

_____
Kevin J. Janet

_____
Date    6/21/07

2

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FREDERICK BANKS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE No.: 07-309 (EGS) |
| | ) | |
| HARLEY LAPPIN, et. al | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## <u>DECLARATION</u>

I, Deborah Ramsey, declare under penalty of perjury as follows:

1)   I am employed by the Library of Congress (Library) as the Manager of Information Analysis, 101 Independence Ave., Washington, D.C. 20540.

2)   One of my collateral duties is to process all Freedom of Information Act (FOIA) requests filed at the Library of Congress.

3)   The Library of Congress is not covered under FOIA, but follows the spirit of FOIA in internal regulation LCR 1917-3, concerning the release of Library records, and responds to all FOIA requests under this regulation.

4)   Freedom of Information Act (FOIA) requests received at the Library of Congress are directed to the Records Management Section (RMS), Office Systems Service Division, for response.

5)   RMS logs each request into a database and assigns a unique identifying number. Each request is recorded with the following data/information fields: name, address, date of request, date request is logged, comments field for specifics of request,  date of response, comments field for type and contents of response, and moneys collected (photocopying fees).

6)   Original hard request copies, along with response letters are also cross referenced to the data base, filed, and stored.

7)    I have personally conducted a search for any request filed by a Frederick Banks at the Library of Congress during the past calendar year and beyond.

8)    My search for such a request from Frederick Banks proved negative, leading me to conclude that he has not filed a FOIA request for the records named at the Library of Congress.

I declare under penalty of perjury that the foregoing is true and correct in accordance with 28 U.S.C. § 1746.


_Deborah A. Ramsey_
Deborah Ramsey


_7/18/07_
Date